EXLINE v. LOWERY ET AL.

1. **Judicial Sale**: SURETY: INDEMNITY. N. became surety upon a note of L., and the latter executed a mortgage to secure him against loss by reason of his becoming surety; judgment having been obtained upon the note against both L. and N., and the other property of L. being found insufficient to satisfy the judgment, N. directed the sheriff to levy upon the property covered by his mortgage, which was accordingly sold to satisfy the judgment: *Held*, that the sale was valid and absolute, and that N. could not enforce his mortgage against the property.

2. **Pleading**: COUNTER-CLAIM. A pleading based upon a counter-claim which does not arise out of the contract or transaction set forth in the petition, and is not connected with the subject of the action, and does not contain new matter constituting a cause of action in favor of all the defendants against all the plaintiffs may be stricken from the files.

*Appeal from Appanoose District Court.*

WEDNESDAY, OCTOBER 3.

ACTION to foreclose a mortgage. There was a decree and judgment as prayed for in plaintiff's petition. The defendants, A. J. Morrison & Co., and A. J. Morrison, appeal. The facts of the case appear in the opinion.

*George D. Porter*, for appellants.

*J. C. Coad*, for appellee.

BECK, J.—The case was submitted to the court upon an agreed statement of facts which, so far as the rights of the parties appealing are involved therein, are as follows:

" 1. That in July, 1869, the plaintiff, George W. Nash, and defendant, W. A. Lowery, executed a joint note—with other notes to other parties—to one Frederick Zugg; that Nash was in point of fact surety only.

" 2. That Nash, at the same date, took the mortgage and note in question as indemnity against the payment of said note from Lowery on certain real estate; that the mortgage was for the sum of $2,350, the note to Zugg was for the sum of $700 or $800.

" 3. That Nash satisfied said mortgage on all the real estate mentioned, except lot 12, block 19, stated in the petition, on the 13th day of July, 1870.

" 4. That on the 13th day of July, A. D. 1870, judgment was rendered on the note of Zugg against both Lowery and Nash for the sum of $700 or $800.

" 5. That subsequently execution was issued against both Lowery and Nash and all of Lowery's property levied upon and sold; that the last piece of Lowery's property sold was lot 12, block 19, in Moulton, Iowa, and bid in by A. J. Morrison and A. J. Morrison & Co., grantors; that the property lacked $167.50 of bringing the amount of the judgment against Nash and Lowery, which was subsequently made, to-wit: December 9th, 1873, by execution, out of the property of Nash, there being no property of Lowery's.

" 6. That said note by its terms bears no rate of interest expressed.

" 7. That from the time of rendition of judgment to the time of the payment by Nash of the $167.50, the costs accruing by levy and advertising and penalty of tax sales which was deducted from the bid was more than the $167.15 paid by Nash.

" 8. That Nash directed the sheriff to levy on lot 12, block

19, as the property of Lowery, claiming that he was only surety on the note.

" 9.    That these defendants' grantors knew that the note and mortgage in question was held by plaintiff, Nash, as an indemnity to secure him as surety for the defendant Lowery, on the said Zugg note, being the note and judgment rendered thereon, that is referred to in the pleadings in this case.

" 10.    It is agreed that the plaintiff, Nash, as surety on the said Zugg note was compelled to pay on said debt $167.15, and which sum was paid December 9th, 1873."

I.    It will be observed that Lowery executed the mortgage to secure Nash against loss or liability incurred by reason of 1. JUDICIAL becoming Lowery's surety to Zugg.   A judgment sale: surety: indemnity. was rendered against both Lowery and Nash upon Zugg's claim, and the lots in question, by direction of Nash, were sold as Lowery's property thereon, the defendants, Morrisons, becoming the purchasers.   After exhausting Lowery's property, a sum remains unsatisfied which is paid by the sale of Nash's property.   Nash now seeks to foreclose the mortgage against the property purchased at the execution sale by Morrisons, making them defendants to the action.   They plead these facts as a defense, claiming that the mortgage is discharged as to the property in their hands.   The court rendered a judgment against Lowery for the amount found due Nash, and declared the mortgage to be a lien upon the property in question.

It is very plain that the property cannot be subjected to sale upon the mortgage.   The object of that conveyance was to secure it as a fund for the protection of Nash, against the claim for which he was surety.   Nash, by directing its sale upon the execution, chose that as the manner of devoting the property for his own protection.   The parties thereby effected the very purpose of the mortgage.   The Morrisons purchased the property with a knowledge of the fact that it was sold for such purpose.   The sale was procured by Nash.   He is estopped to set up a claim to subject it again to his protection.

But it is insisted that as the law requires the property sold upon execution to be appraised, and upon such an appraise-

ment the amount of incumbrances are to be deducted from the ascertained value, we are to presume such proceedings were had. We must rather presume that the lawful course prescribed by equity was pursued in the case, namely, that as the property was levied upon for the protection of Nash, under his direction, it was offered free from the incumbrance. Both the interest of Nash and fair dealing would require this. It would realize a greater sum for his immediate protection offered in that way, and the purchaser would be exposed to no uncertain claim for future liability. The record fails to show the value of the property. If it was greater than the liability of Nash on account of his suretyship for Lowery, the deduction which plaintiff claims was made could have been taken from its value; if it were of less value such deduction of course could not have been made and it could not have been sold on execution at all. Without attaching much importance to the uncertainty of securing the rights of the parties through an appraisement, we reach the conclusion that the sale was absolute on the ground of the interest therein held by Nash, and his instrumentality in directing the sale.

II. The appellants pleaded certain notes and judgments held by them against Nash as counter-claims. The pleading was stricken from the files. This action of the court below is complained of here. The counter-claim pleaded did not arise "out of the contract or transaction set forth in the petition," nor was it "connected with the subject of the action;" neither was it "new matter constituting a cause of action in favor of    *    *    *    all of the defendants    *    *    *    against    *    *    *    all of the plaintiffs." Code, § 2659. There was no error in this ruling of the court.

2. PLEADING; counter-claim.

After this ruling Exline, being the assignee of Nash's claim, was substituted as plaintiff.

III. Plaintiffs insist that as we have not before us all of the evidence, and the court made no finding of facts, its decision cannot be reviewed upon this appeal. It is true that the record presents no testimony and all the facts found by the court are not stated. But the parties submitted the cause upon certain

agreed facts which fully covered the issues. The court of course decided the case upon these facts. The agreed statement of facts stands in the same relation to the decree as a finding of facts made by the court; it is the basis of the court's decision. The court could not find the facts in conflict with the agreement of the parties. We are required, therefore, in the absence of the evidence and finding of facts, to determine whether the decree correctly settled the rights of the parties upon the facts as agreed upon by the parties.

REVERSED.