27 | 187
28 | 257
f29 | 285

[No. 3843.]

DAVIDSON ET AL. v. JENNINGS ET AL.

1. PRACTICE—APPEAL FROM COUNTY TO DISTRICT COURT—MECHANICS' LIENS.

Where a personal judgment was rendered in the county court against the lessees of a mining claim which was declared to be a lien against the mine, the owners of the mine could appeal to the district court from that part of the judgment declaring the lien without appealing from the entire judgment and without making the defendants, against whom personal judgment was rendered, parties to the appeal.

2. CONSTITUTIONAL LAW—MECHANICS' LIENS—ATTORNEY'S FEES.

That part of the mechanic's lien act which provides for the taxing of an attorney's fee for plaintiff's attorney as costs in all suits of foreclosure in which plaintiff shall obtain a judgment and decree of foreclosure, is in contravention of section 6 of the bill of rights and is therefore unconstitutional and void.

3. MECHANICS' LIENS—CONTRACTS—BURDEN OF PROOF.

A mechanic's or miner's lien is the creature of the statute, and attaches only by virtue of work being done or materials furnished under a contract, express or implied, with the owner of the property upon which the lien is claimed, and the burden of proving such contract rests upon the party asserting it, and he must ascertain for himself that the party with whom he deals holds such relation to the work being done and the property upon which it is done, as will entitle him to claim a lien for the work or material furnished.

4. MINING CLAIMS—MECHANICS' LIENS—ESTOPPEL.

The fact that an owner of an interest in a mining claim, which was under lease, was employed by the lessees as bookkeeper, and while so employed was cognizant of the work being done for the lessees and to some extent took part in its direction and gave orders for merchandise in the name of the company under which it was being operated, and failed to notify the parties dealing with the company of his true relation thereto, the contract of lease under which the mine was being worked being on record and disclosing that he had no interest therein, would not obligate him directly or indirectly for the work and materials furnished to the lessees, nor create a lien upon his interest, nor would it estop him from denying that the laborers and material men had a lien upon his interest in the mine for the labor and material furnished.

5. ESTOPPEL—PLEADING—PRACTICE.

To establish an estoppel in pais, the facts constituting the estoppel must be specially pleaded.

6. ESTOPPEL—WHAT CONSTITUTES.

To entitle a party to invoke the doctrine of estoppel, he must actually
    have been misled and induced to act to his prejudice by another's
    conduct, he having on his part used due diligence to ascertain the
    truth.

*Appeal from the District Court of Gunnison County.*

THIS action was originally brought in the county court of
Gunnison county by the appellees against the appellants and
S. B. Outcalt, J. T. Clayton and R. D. Smith, to recover against
Outcalt, Clayton and Smith for goods, wares and merchan-
dise furnished, and labor performed in working the Vulcan
mine, situate in Gunnison county, Colorado, and to establish
and enforce a lien therefor against said mine. Judgments
for the several amounts claimed were recovered in the county
court against Smith, Outcalt and Clayton, and they were de-
clared to be liens against an undivided one-quarter interest
in the mine. Davidson and Himebaugh, who held the title
to this interest, appealed from that portion of the judgment
which subjected said interest to the liens of plaintiff to the
district court of Gunnison county. Motion to dismiss the
appeal was denied, and a trial *de novo* had. The material
facts disclosed by the evidence introduced are in brief as fol-
lows :

On March 18, 1895, the then owners of the Vulcan mine
leased the same, with an option to purchase, to one Frank
Winters, until December 1, 1895, which lease was recorded
in the office of the clerk and recorder of Gunnison county.
On April 11, 1895, the lease was extended until April 1, 1896.
On this date Winters assigned the same to one Spinney, and
later Spinney assigned a one-half interest therein to R. D.
Smith. Subsequently Outcalt acquired the other half, and
about the middle of November, 1895, he and Smith com-
menced working the mine thereunder, and continued to work
until about the first of March, 1896. Smith and Outcalt
carried on their operations under the name " Vulcan Mining
Company " or " Vulcan Mine." Clayton was employed by

them as bookkeeper, in which capacity he was acting during the times the goods were furnished and labor performed for which suit was brought; and in this capacity he issued orders upon which some of the merchandise was furnished, to which he signed the name of the company, adding to such signature " By C." Also at times during this period Clayton was at the mine, and in the absence of Smith and Outcalt gave directions in regard to the work and operations thereof. On April 6, 1895, he acquired the fee simple title to an undivided one-quarter interest ; and during the time the labor was performed and the materials furnished, said interest stood of record in his name. He sold and conveyed this interest to Himebaugh and Davidson on March 2, 1896.

The court below, *inter alia*, found that during the time the labor was performed and materials furnished " the record did not disclose that defendants Smith and Outcalt had any interest in said property; that no agreement existed between said defendants Clayton, Outcalt and Smith for the working and development of said property for their joint benefit; and as a matter of fact, said property was being operated for the benefit of Smith and Outcalt alone; that none of the parties performing labor or furnishing materials, on whose account it is sought to enforce a lien in this action against said property, had actual notice during the period said labor was being performed and said materials furnished, for whose benefit or on whose account said mine was being worked or operated," and found, as a conclusion of law, that Clayton, by failing to notify the lien claimants or their assignors that he was not interested in the working and development of the mine, under the circumstances, was estopped from claiming that such persons have no lien against his interest; and that as against his interest a lien attached for the work performed and materials furnished; and, as Himebaugh and Davidson purchased this interest within the period which the parties claiming liens might file their lien statement, they took such interest subject to said liens, and entered a decree establishing a lien on the undivided one-fourth interest in favor of the lien claimants

in the respective amounts found due them, together with attorney's fees and costs. To reverse this decree, Davidson and Himebaugh bring the case here on appeal.

Messrs. WOLCOTT & VAILE, Mr. W. W. FIELD, Mr. THOMAS C. BROWN and Mr. ERNEST M. NOURSE, for appellants.

Mr. SPRIGG SHACKLEFORD, for appellees.

MR. JUSTICE GODDARD delivered the opinion of the court.

1. Appellees assign cross error upon the overruling of their motion by the district court to dismiss the appeal to that court from the county court. The motion was based upon the ground that the appeal was taken by Davidson and Himebaugh alone, and from that part of the decree only that established the lien, the contention being that an appeal from the county to the district court can be taken only by the united action and concurrence of all the defendants to the suit in the county court. We do not think that this position is tenable. Sec. 1085, Mills' Ann. Stats., *inter alia*, provides :

"Appeals may be taken to the district court of the same county, from all final judgments and decrees of the county court, * * * by any person aggrieved by any such final judgment or decree;" etc.

It will be seen that this statute provides that an appeal may be taken *by any person aggrieved*. Davidson and Himebaugh were affected by the judgment and decree only in so far as it established a lien against their property; and were not concerned with, or directly affected by, that portion which adjudged a personal liability against Smith, Outcalt and Clayton. If it should be held that, as a condition to their right to have so much of the controversy as affected their rights tried *de novo* in the district court, it was essential that all the defendants in the county court should join in the appeal, or that in case of the refusal of any to join, it was incumbent

upon Davidson and Himebaugh to appeal the entire case, thereby necessitating their giving an appeal bond to answer for the personal judgment, it is manifest that they would, in the one event, have been deprived of their right to an appeal; and in the other, they would have reaped no benefit from the submission of their case to the district court, even if successful in defeating the lien. The appeal as taken in no way disturbed the personal judgment against Smith, Outcalt and Clayton, which determined their liability; nor was there any occasion for the district court, upon the trial of the question as to whether or not a lien existed against the property of appellants, to consider the personal liability of those parties. The court was therefore correct in so deciding, and refusing to dismiss the appeal.

2. Counsel for appellants contend that the judgment and decree is erroneous in that the lien decreed against the property of appellants includes, in addition to the principal and interest of the debt and the usual costs, the allowance of attorney's fees to the respective lien claimants. These allowances were made in pursuance of sec. 18, chap. 117, Sess. Laws, 1893, p. 325, which reads as follows:

" In all suits for the foreclosure of liens provided for in this act in which the plaintiff shall obtain a judgment and decree of foreclosure against the property described in said lien, there shall be taxed as costs in addition to the costs already provided for in such cases, a reasonable sum as attorney fee to be fixed by the court at the time of rendering such judgment and decree."

It will be seen that this section imposes a penalty upon the defendant for exercising, in this class of cases, the common right of making a defense, which is accorded to every other litigant in the courts, by subjecting him to the payment of the plaintiff's attorney's fees if he is successful, without giving him (the defendant) a reciprocal right if he is victorious. As furnishing support for this character of legislation, we are referred to the following cases, wherein statutes allowing an attorney's fee to plaintiff in actions against railroad com-

panies for the killing of stock, have been held to be constitutional. *Peoria, etc., Ry. Co. v. Duggan,* 109 Ill. 537; *Kan. Pac. Ry. Co. v. Mower,* 16 Kan. 573; *Perkins v. St. Louis, etc., Ry. Co.,* 103 Mo. 52; *Burlington, etc., Ry. Co. v. Dey,* 82 Ia. 312.

An examination of these cases discloses that the statutes there under consideration required the railroad company to fence its right of way, and provided penalties for the nonperformance of this statutory duty; among them, an attorney's fee; but no such reason underlies the legislation in question. The attorney's fee allowed by the foregoing provisions of our statute is not in the nature of a penalty for the violation of any statutory duty, but a punishment for the failure to pay the claim of the lienor, and cannot be sustained upon the principle announced in those cases. Its validity, therefore, depends upon whether it violates any provision of our constitution. Section 6 of our bill of rights enacts: "That courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and that right and justice should be administered without sale, denial or delay."

In *Durkee v. City of Janesville,* 28 Wis. 464, an act that exempted the city of Janesville from the payment of costs in any action brought against it to set aside any assessment or tax deed, or to prevent the collection of taxes in said city, was held to conflict with section 9, article 1 of the constitution of Wisconsin, which was substantially like the foregoing section of our bill of rights. Chief Justice Dixon, in discussing the construction and effect to be given to that provision, said:

"It is obvious there can be no *certain* remedy in the laws, where the legislature may prescribe one rule for one suitor or class of suitors in the courts, and another for all others under like circumstances, or may discriminate between parties to the same suit, giving one most unjust pecuniary advantage over the other. Parties thus discriminated against would not obtain justice freely, and without being obliged to purchase it. To the extent of such discrimination they would be obliged

to buy justice and pay for it, thus making it a matter of purchase to those who could afford to pay, contrary to the letter and spirit of this provision.    Certainty of remedy implies uniformity of remedy and equality of rights and privileges in all things respecting it, which can only be obtained by general laws, equally binding upon every member of the community. The language denotes that there can be but one remedy for all similar cases, which must operate upon all persons or parties alike, and be equally free and favorable to all."

In *South & North Ala. Ry. Co. v. Morris*, 65 Ala. 193, a statute which imposed upon an unsuccessful appellant a reasonable attorney fee, incurred by reason of taking an appeal from a decision rendered by a justice of the peace in a suit against railroad companies for damages to livestock, notwithstanding it gave the same right to both parties, was held to be in conflict with the 14th amendment to the constitution of the United States and section 14 of their bill of rights, which is identical with section 6 of ours.    It is there said :

" The clear legal effect of these provisions is to place all persons, natural and corporate, as near as practicable, upon a basis of equality in the enforcement and defense of their rights in courts of justice in this state, except so far as may be otherwise provided in the constitution.    This right, though subject to legislative regulation, cannot be impaired or destroyed under the guise or device of being regulated.    Justice cannot be sold, or denied, by the exaction of a pecuniary consideration for its enjoyment from one, when it is given freely and open handed to another, without money and without price. Nor can it be permitted that litigants shall be debarred from the free exercise of this constitutional right, by the imposition of arbitrary, unjust and odious discriminations, perpetrated under color of establishing peculiar rules for a particular occupation.    Unequal, partial and discriminatory legislation, which secures this right to some favored class or classes, and denies it to others, who are thus excluded from that equal protection designed to be secured by the general law of the land,

is in clear and manifest opposition to the letter and the spirit of the foregoing constitutional provisions."

In *Chicago, St. Louis, etc., Ry. Co. v. Moss*, 60 Miss. 641, a similar statute was adjudged unconstitutional, the court saying :

"The right of appeal cannot be fettered and clogged with reference to the parties litigant or the attitude they occupy as plaintiff or defendant. All litigants, whether plaintiff or defendant, should be regarded with equal favor by the law, and before the tribunals for administering it, and should have the same right to appeal with others similarly situated. All must have the equal protection of the law, and its instrumentalities. The same rule must exist for all in the same circumstances."

In *Gulf, Colo. & Santa Fé Ry. Co. v. Ellis*, 165 U. S. 150, an act of the legislature of Texas, which provided that any person having a valid *bona fide* claim for personal services, or for damages, overcharges on freight or claims for stock killed or injured by the trains of any railway company, that did not exceed $50.00, might present the same for payment by filing it with the station agent of such corporation in any county where suit might be instituted; and if, after the expiration of thirty days after such presentation such claim had not been paid or satisfied, he might immediately institute suit thereon in proper court; and if he should obtain judgment for the full amount of his claim, he should be entitled to recover the amount of such claim and all costs, and in addition thereto, a reasonable attorney fee, not to exceed $10.00, to be assessed or awarded by the court or jury trying the issue, was held to be unconstitutional. Mr. Justice Brewer, who delivered the opinion of the court, said :

"The act singles out a certain class of debtors and punishes them when for like delinquencies it punishes no others. They are not treated as other debtors, or equally with other debtors. They cannot appeal to the courts as other litigants under like conditions and with like protection. If litigation terminates adversely to them, they are mulcted in the attor-

ney's fees of the successful plaintiff; if it terminates in their
favor, they recover no attorney's fees.   It is no sufficient
answer to say that they are punished only when adjudged to
be in the wrong.   They do not enter the courts upon equal
terms.   They must pay attorney's fees if wrong; they do not
recover any if right, while their adversaries recover if right,
and pay nothing if wrong.   In the suits, therefore, to which
they are parties, they are discriminated against and are not
treated as others.   They do not stand equal before the law.
They do not receive its equal protection.   All this is obvi-
ous from a mere inspection of the statute."

And after a thorough and exhaustive review of all the
cases bearing upon the subject, he held the act to be uncon-
stitutional because it operated to deprive the railway com-
panies of property without due process of law, and denied
to them the equal protection of the law in that it singled
them out of all citizens and corporations and required them
to pay, in certain cases, attorney's fees to parties successfully
suing them, while it gives to them no like or corresponding
benefit.   To the same effect are *Joliffe v. Brown*, 14 Wash.
155, *Coal Co. v. Rosser*, 53 Ohio St. 12, *State v. Fire Creek
Coal & Coke Co.*, 33 W. Va. 188, and others that might be
cited.

In but few of the states are statutes allowing attorney's
fees in this class of cases to be found.   In California such
legislation has been upheld by the supreme court, but in none
of the cases has its constitutionality been presented, discussed
or determined.   In the following cases its constitutionality
was directly challenged and passed upon.   In *Grand Rapids
Chair Co. v. Runnels*, 77 Mich. 104, a statute which allowed
$5.00 attorney's fees as part of plaintiff's costs in a log lien
suit, was held to be illegal and unauthorized for the reasons
stated in *Wilder v. C. & W. M. Ry. Co.*, 70 Mich. 382; *Schut
v. C. & W. M. Ry. Co.*, 70 Mich. 433; *Lafferty v. C. & W. M.
Ry. Co.*, 71 Mich. 35.   In *Wilder v. C. & W. M. Ry. Co.*, the
court, in discussing the question, says:

" This inequality and injustice cannot be sustained upon

any principle known to the law. It is repugnant to our form of government, and out of harmony with the genius of our free institutions. The legislature cannot give to one party in litigation such privileges as will arm him with special and important pecuniary advantages over his antagonist. ''

In *Randolph v. Builders & Painters Supply Co.*, 106 Ala. 501, the provision allowing attorney's fees was held to be in violation of section 14 of their bill of rights, which, as above stated, is identical with section 6 of ours, ''in that it allows a fee to the plaintiff's attorney for prosecuting his suit successfully, whereas, a like fee is not allowed the defendant's attorney, in case the plaintiff fails in his suit, and on that account it is discriminative and class legislation. ''

In *Wortman v. Klienschmidt*, 12 Mont. 316, the constitutionality of the act was upheld by a divided court, the majority opinion being delivered by Blake, C. J. But we think the able dissenting opinion of DeWitt, Justice, is better supported by reason and authority.

In *Ivall v. Willis*, 17 Wash. 645, a loggers' lien act which provided an attorney's fee for the person claiming the lien, was upheld, the court observing that such act was clearly distinguishable from the statute under consideration in *Joliffe v. Brown, supra,* which provided for an attorney's fee to plaintiff in case of recovery against the railway company for killing stock, and which was there declared unconstitutional because it did not provide for the payment of a like fee by plaintiff in case he should be unsuccessful, for the reason that the attorney's fee provided by the latter was compensation to plaintiff for expenditures necessarily made by him in the foreclosure of his lien, and allowable upon the same principle that costs are allowed. It is difficult to see how the designation of such fee as costs obviates the objection that it confers upon the plaintiff a right that is denied to defendant, and that it is an '' attempt to grant special privileges and advantages to one class of litigants, at the expense, and to the detriment, of another.''

Appellee lays some stress upon the fact that Mr. Justice

Brewer, in *Gulf, Colo. & Santa Fé Ry. Co. v. Ellis, supra,* mentions, in the course of his discussion, that statutes giving special protection to laborers and mechanics have been upheld; but the reasons he gives for distinguishing the legislation there under consideration from such statutes, apply with equal force to our act, to wit, that it does not aim to protect laborers and mechanics alone; but its benefits are conferred upon every individual, whether rich or poor, who has a claim of the character described. It extends the benefit to material men, contractors and others who do not come within the reason that justifies such legislation for the protection of laborers or mechanics. While it is true that statutes extending the right to a lien to these other classes have been upheld, yet the principle upon which they have been sustained affords no support for extending to them the benefits of the provision under consideration. We are unable to perceive any reason why, in an action to enforce their claims for merchandise or material furnished in the erection of a house or for the development of a mining claim, they should be afforded any other or greater rights than are given other merchants who furnish provision or supplies to persons for family consumption; or that their debtors should not have the same right to contest the justice of their claims upon the same terms and conditions as is afforded to other debtors by the general law of the land. It is no answer to say that the debtor may avoid the imposition of this additional cost by paying his honest debts, because the very purpose of the litigation he invokes is to determine whether he owes the debt or not; and it is immaterial whether he successfully defeats the larger part of the claim, he may nevertheless be mulcted in a sum which will deprive him of any benefit from the defense which he has legitimately established. It is also equally immaterial whether he interposes a vexatious defense or makes an honest, though unsuccessful one; or allows judgment to be taken against him by default; he is subjected to the same penalty.

We think this character of legislation is prohibited by sec-

tion 6 of our bill of rights, and that both upon principle and authority section 18 of the lien law is unconstitutional, and that the court below erred in allowing the attorney's fees complained of.   This, however, if the only error, would not necessitate a reversal of the entire judgment, since the lien and judgment are affected only to the extent of the illegal excess.

3. The principal and controlling question presented by appellants' assignments of error is whether, under the pleadings and facts of this case, the court below erred in holding that a lien attached against Clayton's interest by reason of his connection with, and apparent interest in, the operations of the mine.   A mechanic's or miner's lien is the creature of the statute, and attaches only by virtue of work being done or materials furnished under a contract, express or implied, with the owner of the property upon which the lien is claimed, and the burden of proving such contract rests upon the party asserting it; and he must ascertain for himself that the party with whom he deals holds such a relation to the work being done, and the property upon which the same is done, as will entitle him to claim a lien for the work or material which he furnishes.   *Rico R. & M. Co. v. Musgrave*, 14 Colo. 79 ; *Tritch v. Norton*, 10 Colo. 337 ; *Henry v. Bond*, 55 N. W. Rep. 643 ; *Brown v. Cowan*, 110 Pa. St. 588.

In this case there is an entire absence of evidence tending to show that the mine was being worked under any contract or arrangement by virtue of which Clayton was in any way made liable for the labor performed or merchandise furnished, or that there existed any contract which directly or indirectly obligated him to pay for the same, or that the lien claimants or their assignors performed the work or delivered the merchandise sued for, relying upon his personal credit. But, on the other hand, it is clearly established that the property was being operated by Smith and Outcalt, under a lease in which Clayton had no interest, and the labor was performed and the merchandise furnished exclusively for

their use and benefit. This lease and its several assign-ments were of record in Gunnison county prior to and dur-ing the time the indebtedness herein sued for accrued, and were notice to all parties concerned that the same had been transferred and then stood of record in the name of Smith and Spinney, and the lien claimants or their assignors, had they taken the precaution to inquire, could have readily as-certained that Spinney's interest had passed to Outcalt, and that at the time of the transactions mentioned in the com-plaint Smith and Outcalt, in the contemplation of the me-chanic's lien statute, were the only "owners" of the property whose interest therein could be subjected to lien for their claims. Under these circumstances it is clear that no lien accrued against Clayton's interest in the mine in their favor by virtue of any contract relation that they directly or indi-rectly held to him. This was evidently the conclusion reached by the court below, since it predicated the liability of. Clay-ton and the right to a lien against his interest in the prop-erty, solely upon the ground that he was cognizant of the work being done, and to some extent took part in its direc-tion; and having in some instances given orders for mer-chandise in the name of the company under which it was being operated, and failing to notify the parties dealing with the company of his true relation thereto, he is now estopped from claiming that such persons have no lien against his interest. We do not think that, under the cir-cumstances of this case, such conclusion is justified. As we have seen, it was the duty of these lien claimants to ascertain with whom they were dealing, and for whose use and benefit they were performing labor and furnishing ma-terial. And certainly in the then condition of the record, Clayton had a right to presume that they had knowledge of the true state of the title, and of the facts they could have ascertained by such inquiry as was suggested by the record. "Where a party's rights in property sufficiently appear of record, mere silence on his part is no violation of duty."

7 Am. & Eng. Ency. of Law (1st ed.), p. 13, note "Silence" and authorities there cited.

But aside from this, the question of estoppel was neither raised by the pleadings nor supported by the evidence. That the facts constituting an estoppel *in pais* must be especially pleaded is well settled. *De Votie v. McGerr*, 15 Colo. 467; *Gaynor and Standley v. Clements*, 16 Colo. 209; *Prewitt v. Lambert*, 19 Colo. 7.

The complaint avers that Smith, Outcalt and Clayton made and entered into an agreement with the parties performing labor upon the Vulcan mine, and that the goods, wares and merchandise were supplied to defendants to be used for the working, preservation and development of said Vulcan mine, thus predicating their right to relief as against Clayton upon direct agreements between him and the persons for whose labor and material the liens are claimed. The answer of these appellants denied these allegations and any and all indebtedness on the part of Clayton. The parties went to trial upon these issues. The testimony wholly failing to show a contract of employment by Clayton, appellees undertook to show such a participation in the business as would raise an implied contract on his part. Not only was this testimony inadmissible under the issues formed by the pleadings, but was, we think, clearly insufficient to raise any implied assumpsit. It at most disclosed acts on his part within the scope of his employment, and wholly fails to show that in any instance the parties performed the labor or furnished the materials, relying upon his liability as a party in interest, or upon his personal credit, or that they were induced so to do by his acts or apparent connection with the business. To entitle a party to invoke the doctrine of estoppel, he must actually have been misled and induced to act to his prejudice by reason of another's conduct, he having on his part exercised due diligence to ascertain the truth. In *Moore v. Bowman*, 47 N. H. 494, the doctrine is thus concisely stated:

" To have this effect, however, the defendant must actually have been misled by the plaintiff's conduct, and induced

thereby to change his position. If he is not so misled * * * and with a reasonable use of means within his reach he might have ascertained the fact, he could not set up an estoppel. The truth is, the party setting up an estoppel is himself bound to the exercise of good faith and due diligence to ascertain the truth." *Douglas v. Craig,* 13 S. C. 371; 2 Herman on Estoppel, § 969.

If it can be held that a lien can be created against the interest of an owner of property in this state, in the absence of any contract on his part, by reason of his conduct, it is manifest that the facts disclosed by this record are insufficient to work such a result.

We are, therefore, of the opinion that in the circumstances of this case, no lien was created against Clayton's interest in the mine, and the court below erred in adjudging a lien against such interest. For the foregoing reasons, the decree of the court below is reversed, and the cause remanded, with directions to enter judgment in favor of appellants.

*Reversed.*

MR. JUSTICE GABBERT not participating.