SEAMAN, IMPLEADED, ETC. V. HAX ET AL. (TWO CASES).

1. SALE OF CHOSE IN ACTION ON EXECUTION.— By statute the mortgagor's interest in land is made subject to execution sale. And the mortgagee, as well as a stranger, may subject this interest to the payment of an independent debt.

2. CONSTRUCTIVE NOTICE OF MORTGAGE LIEN.— The recording of a mortgage, regular in form and correctly describing the property incumbered, operates as constructive notice to third persons of the lien created thereby.

3. PLEADING — AVERMENTS AND ISSUES.— The denial in a pleading of "legal notice * * * so as in any way to affect * * * the title derived," etc., does not put in issue the allegation of notice in the pleading answered.

*Appeal from District Court of Arapahoe County.*

IN the year 1882 Catherine Caspar, being indebted to appellees in the sum of $2,000, executed four promissory notes for $500 each, payable in three, six, nine and twelve months, respectively. To secure these notes she also gave a mortgage upon eight lots in the city of Denver, which mortgage was at the time duly filed for record with the clerk and recorder of Arapahoe county. At the time of the foregoing. transaction four of the said lots were already incumbered by a trust-deed. The four lots thus incumbered were afterwards sold to satisfy the indebtedness secured by the trust-deed.

In 1884 appellees obtained a judgment against Caspar for a separate and distinct indebtedness. In July of said year, under said judgment, execution was duly levied upon the four lots covered by the mortgage. They were sold at sheriff's sale, and Gartner, one of the appellees, became the purchaser thereof. In August, 1884, the mortgage notes being due and unpaid, appellees began suit to obtain judgment thereon, and to foreclose their mortgage against the property. In 1885, while said foreclosure suit was still pending, Bentley, who was im-

pleaded in the present suit, obtained a judgment against Caspar for the sum of $85.53. After the expiration of six months from the date of the execution sale above mentioned, at which Gartner became the purchaser, Bentley, as an execution creditor, redeemed, under the statute, from that sale. His execution was then levied upon the property. It was sold by the sheriff. He became the purchaser, and ultimately received his sheriff's deed.

In September, 1886, a judgment of foreclosure was rendered in the mortgage proceedings, and the real estate ordered sold, in pursuance thereto, to satisfy the debt, then amounting to $2,893.75. On the 12th of October, 1886, Bentley sold and conveyed by deed to appellant Seaman the interest acquired by him under his sheriff's deed.

On the 25th of October, 1886, the present action was instituted, Caspar, Seaman and Bentley being made parties thereto. The object was to obtain a decree which should in effect remove the cloud cast upon the title by reason of the Bentley execution sale and the Seaman purchase, so that upon sale under the decree of foreclosure the purchaser's title might be perfect. Defendants Bentley and Caspar disclaimed. Defendant Seaman answered. A demurrer to his second defense was sustained, and from the order thus entered the first of these appeals was taken, under the act of 1885, no longer in force. Afterwards, Seaman having in the meantime amended his answer, upon motion the court found in favor of appellees on the pleadings, and rendered a decree accordingly. To review the latter proceedings and decree the second appeal was taken.

Mr. J. A. BENTLEY, for appellant.

Mr. O. B. LIDDELL, for appellees.

CHIEF JUSTICE HELM delivered the opinion of the court.

These appeals are considered together, as the view of the court, hereafter expressed, is decisive of both.

It is unnecessary to critically analyze the pleadings. The answer contains many supposed denials, and it also sets up supposed affirmative defenses. But we shall address ourselves to the question whether or not the facts that appear in the pleadings, without proper contradiction, warranted the decree rendered by the court below. If we shall discover that the decree was proper under the pleadings as they stood at the time it was rendered, no error was committed by the court in its ruling upon the demurrer to the second defense.

Though the mortgage originally described eight lots, the sale to a third party in satisfaction of a prior trust-deed entirely divested of its value the mortgagees' lien upon the four lots sold; and their security was narrowed to the remaining four lots, which alone are the subject of the present controversy.

Appellant relies upon the doctrine of equitable estoppel, i. e., an estoppel created by the conduct of appellees. His position is that appellees, by levying execution upon and selling the mortgaged lots, waived their right to enforce the mortgage lien as against him or his vendor; but he cites no case that recognizes such waiver or estoppel under circumstances similar to those before us.

By statute in this state, the mortgagor's interest in land is expressly made subject to execution sale; and there is no doubt but that a stranger to the mortgage might have levied his execution upon the premises in question, and have sold the same to satisfy his judgment. The mortgage lien would not, in such case, have been divested, and the purchaser would have taken title subject thereto. To all intents and purposes, after the issue of the sheriff's deed, he would step into the shoes

of the mortgagor. We know of no reason why the mortgagee has not the same rights in this respect as other creditors. Suppose his mortgage debt is not due. The mere fact that he happens to have a prior lien, given to secure a different debt which has not yet matured, would not, either upon principle or authority, prevent his proceeding in the premises as any other judgment creditor.

The mortgagee must not make a fraudulent use of his superior lien, secrete its existence, or otherwise mislead others to their disadvantage; but the mere isolated fact that he, instead of another, subjects his mortgagor's remaining interest to judicial sale in satisfaction of an independent debt, does not of itself work the estoppel contended for.

The acts of appellees do not constitute a fraud in law; and we scan the record before us in vain for such *indicia* of fraud in fact as will sustain appellant's contention.

Appellees do not appear to have done anything, either by word or act, or by omission to speak or act, tending to mislead or deceive appellant. Their mortgage was regular in form. It correctly described the property, and was duly recorded. Thus all parties were visited with constructive notice of its existence, and the lien created thereby. It was not released of record, and nothing was said or done by appellees to fairly justify an inference that the mortgage notes had been paid. On the contrary, the complaint avers that appellant had notice, when he purchased, that the foreclosure suit was pending. The denial that his vendor, Bentley, had "legal notice" thereof, "so as in any way to affect * * * the title derived," etc., was no denial, even as to Bentley.

We fail to discover in these transactions the essential elements of an equitable estoppel. Defining such ele-

ments, see Bigelow, Estop. (2d ed.) 437; 2 Pom. Eq. Jur. § 805; *Griffith v. Wright,* 6 Colo. 248.

The judgments of the court below in both cases are affirmed.

*Affirmed.*

Mr. Justice Elliott not sitting.