A. E. MATLESS v. JOHN WILLIAM SUNDIN, *et al.*, Appellants.

**Estoppel.** One who owns two judgments may sell lands on the junior one and then sell to satisfy the senior, where the first sale is made without any representations and the buyer, from all that appears, understood the situation. *Exline v. Lowery*, 46 Iowa, 536; *Jordan v. Brown*, 56 Iowa, 283; and *Mills v. Life Co.*, 60 Iowa, 168, *distinguished*.

**SAME.** Bidding on the property is not a representation that any rights under the senior lien are waived.

**Several Judgments: RENDERED IN ONE ACTION.** May be enforced by separate executions when rendered in favor of different persons upon different obligations. *Hardin v. White*, 63 Iowa, 634, *dissenting*.

*Appeal from Keokuk Superior Court.*—HON. H. BANK, JR., Judge.

WEDNESDAY, APRIL 3, 1895.

Action in equity to quiet in plaintiff the title of certain real estate. There was a hearing on the merits, and a decree for the plaintiff. Defendants appeal.— *Affirmed.*

*W. D. Patterson* for appellants.

*J. F. Smith* for appellee.

Robinson, J.—The land in controversy is the southeast quarter of the northeast quarter of section 11 in township 66 north, of range 6 west, in Lee county. Title thereto is claimed by parties to this action through one Nelson Anderson, who in the year 1884 owned the east half of the northeast quarter of the section specified. In June of that year he executed a mortgage thereon to one Thomas Reddie, who assigned it to

Thomas Sawyer. In the next October, Anderson gave a second mortgage on the land to Sawyer. In March, 1890, Anderson executed a third mortgage on the land. That mortgage also included sixty acres of land in section 2 in the same township and range, upon which it was a first lien, and was given to A. E. Matless, as administrator of the estate of George Pearce. It appears that Sawyer died, and in October, 1892, his executors brought an action in the district court of Lee county to foreclose the first and second mortgages. The third mortgage had then been assigned to Matilda Pearce, and she appeared in the action, and filed a cross-petition, making different persons, including the defendant Hilpert (a judgment creditor), parties defendant, and demanded the foreclosure of her mortgage. Before any decree was entered, the executors of Sawyer assigned the first and second mortgages to Henry Gerboth. On the tenth day of October, 1892, a decree was rendered on the cross-petition of Matilda Pearce, adjudging that her mortgage was a first lien on the land described in the mortgage, "except the claims of Henry Gerboth," foreclosing it, "but without prejudice as to the claims of Henry Gerboth," and ordering the sale of the mortgaged premises to satisfy the mortgage debt. On the twelfth day of October a special execution issued for that purpose. On the fourteenth day of October the first and second mortgages were assigned to A. E. Matless, he was substituted as plaintiff, and a decree was rendered adjudging his one mortgage to be the first lien on the eighty-acre tract in section 11, and foreclosing both, and ordering the sale of the land for the payment of the amount for which the decree was rendered. On the nineteenth day of October the decree in favor of Matilda Pearce was assigned to A. E. Matless. The land in section 2 and the land in controversy were sold by virtue of the

execution issued under the decree rendered in favor of
Matilda Pearce, on the eleventh day of November, to
the defendant Fred Hilpert. In November, 1893, a
sheriff's deed for the land so sold was issued to Hilpert;
and in January, 1894, he executed therefor to his
codefendant Sundin a warranty deed. On the
eighteenth day of November, 1892, a special execution
issued on the decree in favor of Matless. On the nine-
teenth day of the next month the eighty-acre tract of
land in section 11 was sold to him, and at the expiration
of a year a sheriff's deed for the land was executed to
him. He now claims to be the absolute owner of the
south half of the land.

It is insisted by the defendants that the plaintiff is
estopped to claim title to or interest in the land adverse
to them, because he owned both decrees when the first
sale was made; that it was made under the direc-
tion of his attorney, who bid against Hilpert, and
who received the money realized from the sale;
that the plaintiff retains that money, and has by his con-
duct waived any lien upon or interest in the premises
which he may have. It is shown that the attorney for
the plaintiff superintended the sale of November, 1892,
and directed that the land be sold in parcels. He
started the bidding, and continued to bid on the differ-
ent parcels of land sold until enough was realized to
satisfy the execution under which the sale was being
made. After the land in section 2 was sold, he found
that the amount of the sale was not sufficient to
satisfy the execution, and directed the sale of the forty-
acre tract in controversy, bidding therefor the sum of
one hundred and ninety-nine dollars. Hilpert bid two
hundred dollars, and it was sold to him. It is not
claimed that the plaintiff or his attorney made any
representations whatever to Hilpert to induce him to
purchase the land. His attorney was with him at the

sale, and his bids were made voluntarily, without inducement of any kind whatever from the plaintiff. The attorney who acted for the plaintiff at the sale did not advise Hilpert to bid, nor tell him that the title to the land was good.

The question we are required to determine is whether one who owns two judgment liens on real estate, and who sells it under the junior lien, without fraud or repr̃entations of any kind, is estopped by such sale, and the receiving of the money thereunder, to sell the land again to satisfy the first lien. It is well settled that the rule *caveat emptor* applies to sheriff's sales, and that the interest sold under an execution is that of the judgment debtor. *Weaver v. Stacey*, 93 Iowa, 683, 62 N. W. Rep. 24. In this case the interest was conveyed in the first instance by a mortgage which was subjected to two prior ones on the tract in controversy. The two decrees rendered, protected interests which had been created by the first and second mortgages, and the sale made under the third was made subject to those interests. The rule in such cases is stated in section 377 of Freeman on Judgments, as follows: "If the same plaintiff have two judgment liens on the same land, he may sell under the junior without releasing or in way affecting the senior, unless it can be shown that he was guilty of some fraud upon the purchaser, as by misleading him in relation to the existence of the senior judgment. The sale of lands under a junior judgment passes title subject to all prior liens." We think this states the rule correctly, and it has support in the decisions of the courts. *Lathrop v. Brown*, 23 Iowa, 41; *Shotwell v. Murray*, 1 Johns, Ch. 512; *Seaman v. Hax* (Colo. Sup.) 24 Pac. Rep. 461. A person may be estopped by remaining silent when he knows another is acting under a misapprehension of his rights, but the record in this

case fails to show any duty on the part of the plaintiff to call the attention of Hilpert to the lien of the decree under the first and second mortgages at the time the sale in question was made. It is not claimed that Hilpert did not know of the mortgages and the decree. It is shown that the amount of his bid was less than the value of the land. If he bid more than the value of the interest sold, the plaintiff was not responsible for it. The money paid on the bid was used in paying the amount due on the decree under which the sale was made. So far as is shown by the evidence, Hilpert acted with full knowledge of all the material facts; and, if his bid was the result of a mistake, it was of law, and not of fact. None of the cases upon which he relies appear to us to be applicable to the controlling question in the case. He claims that *Exline v. Lowery*, 46 Iowa, 556, is in point. In that case it appeared that a surety had taken a mortgage to indemnify himself against loss by reason of his suretyship. A judgment was rendered against him and his principal, and the mortgaged property sold at his instance to satisfy the judgment. This court held that, by directing the sale of the property, the surety chose the manner of devoting it to his own protection, and that the mortgage cou'd not be enforced after the sale. It is clear that this case is wholly unlike that, and cannot be controlled by it. In *Jordan v. Brown*, 56 Iowa, 283, it appeared that Brown, who had an interest in certain land, stood by and assisted in making a sale of the land to one who did not know of his interest. Brown was held to be estopped to claim title as against the purchaser. In *Miles v. Lefi*, 60 Iowa, 168, it was held that the mortgagee of chattel property who stood by and encouraged another to buy the mortgaged property at public sale was estopped to dispute the validity of the sale. A statement of the controlling facts in these cases shows

that they are unlike this case. The evidence does not show that the plaintiff did or said anything which should have deceived or misled Hilpert. The fact that the plaintiff, by his attorney, bid on the property, was not in any sense a representation that the rights conferred by the senior liens were waived. It is said that a creditor can sell the land of his debtor but once in the same action or proceeding. In the case of *Hardin v. White*, 63 Iowa, 634, it was found that there had been in effect two sales of land under the same decree to satisfy a single indebtedness, and this court held that the second sale was unauthorized. It is true the two sales under consideration in this case were under decrees rendered in one action. But the decrees were rendered in favor of different persons, on different obligations, and neither was merged in the other; nor did they lose their distinct characteristics when both became the property of the plaintiff. They continued to be enforceable by separate executions in the same manner and to the same extent as though rendered in different actions. We fail to discover any element of estoppel in the case. The decree of the superior court appears to be correct, and it is *affirmed*.