[No. 2172.]

## TELLER v. HILL.

1.  **Statute of Uses—Conveyances—Trusts.**

The statute of uses (27 Henry VIII, chap. 10) is in force in Colorado, and where land is conveyed to one person for the use of or in trust for others, by a deed which expresses a mere passive trust, the legal as well as the equitable title vests thereby in the cestuis que trust and the trustee takes nothing.

2.  **Same—Judgment Liens.**

Where land was deeded to one person for the use of others by a deed which merely expressed a passive trust and such deed was recorded, a title in fee was thereby vested in the cestuis que trust, and a transcript of judgment against the cestuis que trust being filed, the judgment lien thus created in favor of the judgment creditors was superior to any secret lien or trust existing in favor of the trustee created by oral agreement between the trustee and the cestuis que trust of which the judgment creditors had no notice.

3.  **Same—Attorneys' Liens.**

Where land was conveyed to a trustee for the use of other parties by a deed which expressed a mere passive trust which deed was recorded, a judgment lien created by filing a transcript of judgment against the cestuis que trust was superior to an attorney's lien in favor of the trustee of which the judgment creditors had no notice.

4.  **Attorneys' Liens—Waiver—Contracts.**

An agreement between an attorney and his clients whereby the attorney at a sale of land, under a decree obtained by him for his clients was to purchase the property in trust for his clients and sell the same and out of the proceeds pay his fee and costs was a waiver of his attorney's lien.

*Appeal from the District Court of Arapahoe County.*

Messrs. TELLER & DORSEY, for appellant.

Mr. H. M. TELLER and Mr. JAMES H. TELLER, of counsel.

· Mr. W. C. KINGSLEY and Mr. RICHARD MC-KNIGHT, for appellee.

GUNTER, J.

September, 1887, Ellen R. Seymour and W. G. Pell, owners of certain mining property, conveyed the same to the Slide and Spur Gold Mines Company (Limited). In 1889, the company having defaulted in the payment of the purchase price of the property so conveyed, the vendors, Seymour and Pell, sued in the United States circuit court for the district of Colorado to have decreed a vendor's lien upon the property sold, and in July, 1890, obtained a decree establishing their lien. September, 1894, the master in chancery sold the property under the decree, and in May following made a deed, pertinent parts of which are as follows:

. "Now, therefore, I, Adolphus Capron, one of the masters in chancery of the said court, did on the said 24th day of September, A. D. 1894, at one o'clock p. m. of the said day, at the front door of the court house of the county of Boulder, in the city of Boulder, it being the time and place at which the said sale was announced in the said advertisement to take place, offer for sale to the highest bidder for cash the same premises above described, except that in and by the terms of said decree the complainants were allowed at the said sale to bid for said property up to the amount of said decree with interest thereon without paying any cash except sufficient to pay costs, and thereupon Willard Teller bid for the said complainants, in his name for the use of complainants, the sum of $362,000, and he, at that price, being the highest bidder therefor, the same was struck off and sold to the said Willard Teller, and

"Whereas, it was further in said decree ordered and decreed that upon said sale the said master in

chancery making such sale should make, execute and
deliver to the purchaser a deed of the property so
sold by him, upon the execution and delivery of
which the said defendant, the Slide and Spur Gold
Mines Company (Ltd.), its successors and assigns,
and all persons claiming through, by or under it,
should be forever barred of all right, title or interest
in said property, and of all equity of redemption
thereof.

"Now therefore I, Adolphus Capron, master in
chancery aforesaid, do by these presents grant, bar-
gain, sell and convey unto the said Willard Teller,
trustee, and to his heirs and assigns forever the said
real estate   *   *   *   to have and to hold to the said
Willard Teller, trustee, for his heirs and assigns
forever."

This deed was of date May 11, 1895, and re-
corded in the office of the county clerk of the county
wherein the property was situate May 13, same year.
April, 1894, a judgment for $3,571.00 and costs was
recovered by appellee Hill against Ellen R. Seymour
and W. G. Pell *et al.*, and a transcript thereof was
filed in the office of the clerk of the said county of
Boulder.

In April, 1895, the present action was instituted
by appellee for the purpose of subjecting the above
mining property conveyed by the deed from the
master in chancery to Teller, trustee, to the judg-
ment of appellee, and to have his judgment declared
a prior lien to any claim of the appellant Teller.

From the judgment awarding appellee the re-
lief prayed the defendant below has appealed.

The position of appellee is that the Statute of
Uses, 27 Henry VIII, c. 10, operated upon the
legal estate conveyed to Teller by the master's deed
executing the legal estate and uniting thereby the
legal and equitable estate in the *cestuis que* use, who

thus became complete owners of the estate as well at law as in equity; that upon the estate of the *cestuis que* use Seymour and Pell thus created the transcript of the appellee's judgment by operation of law became a lien, and that such lien was superior to any secret lien existing between appellant Teller, and Seymour and Pell, the beneficiaries under the master's deed.

Appellant denies that the Statute of Uses is in force in Colorado. Contends that if it is, it did not operate upon the master's deed, because the trust created thereby and by a certain oral agreement was an active trust, and therefore not within the statute. Further, that the firm of Teller & Orahood had an attorney's lien upon the estate created by the master, superior to the lien created by the transcript of judgment of appellee.

1. We have adopted, along with the common law of England, "all acts and statutes of the British parliament made in aid of or to supply the defects of the common law prior to the fourth year of James the First" as are of a general nature, except designated statutes.—Mills' Ann. Stats., vol. 2, § 4184.

That the Statute of Uses was one of the statutes so adopted by this commonwealth, was ruled in *Morgan v. Rogers* (Cir. Ct. App., 8 Cir.), 79 Fed. 577. No authority is cited to the contrary.

2. The master's deed recites that "complainants Pell and Seymour were allowed to bid without paying any cash except sufficient for costs, and that thereupon Willard Teller *bought for complainants* in his own name for the *use of said complainants* * * * . Therefore I, Adolphus Capron * * * grant, bargain, sell and convey unto the said Willard Teller, trustee, * * * , to have and to hold unto the said Willard Teller, trustee, * * * ."

According to the language of this deed Willard Teller purchased the property conveyed for the use of complainants, and it was deeded to him, according to the language of this deed, for the use of complainants, that is, Seymour and Pell.

"Recitals are introduced for the purpose of explaining why the deed is executed, or of showing circumstances which preserve the connection in the chain of title, * * * . Particular recitals are conclusive evidence of the facts recited in actions in which the purpose of the deed is directly involved."—Devlin on Deeds, § 992.

"The rule is well settled that the parties to a deed are bound by the recitals in it legitimately appertaining to the subject-matter, and that this applies to privies in blood, privies in estate and privies in law."—*Robbins v. McMillan*, 26 Mass. (4 Cush.) 434.

There is thus on record a deed wherein the grantor conveys to the grantee certain real estate for the use of third parties. The parties thus created, if we look to the recorded deed alone, an express passive trust. A conveyance of such character is within the Statute of Uses.

"Thus, if A. grants or bequeaths land to B. and his heirs, in trust for C. and his heirs, the trustee B. will take nothing in the land, but the legal title, as well as the beneficial use, will vest immediately in C., for the Statute of Uses, so called, executes the possession and the legal title in the same person to whom the beneficial interest is given. * * * A use, a trust and a confidence is one and the same thing, and if an estate is conveyed to one person for the use of or upon a trust for another, and nothing more is said, the statute immediately transfers the legal estate to the use, and no trust is created, although express words of trust are used. So absolute

33

is the statute that it will operate upon all conveyances in the words above stated, although it was the plain intention of the settler that the estate should vest and remain in the first donee; for the intention of the citizen cannot control express enactments of the legislature, or positive rules of property."—Perry on Trusts (5 ed.), § 298.

"Every estate in lands which shall be granted, conveyed or devised to one, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple estate of inheritance, if a less estate be not limited by express words, or do not appear to be granted, devised or conveyed by operation of law."—Mills' Ann. Stats., vol. 1, p. 587, sec. 433.

Reading this section of the statute into the master's deed, the substance of the language of the deed becomes a grant of land by A. to B. and his heirs in trust for C. and D. and their heirs:

"The Statute of Uses will only operate upon a conveyance to uses, and transfer the legal to the holder of the equitable title, when the following three elements are present: First, a person seized to a use, and *in esse;* second, a *cestui que* use *in esse;* and, third, a use *in esse.*"—Tiedman on Real Property, § 460.

Appellant contends, as stated, that all the terms of the use or trust were not embodied in the deed, and it appeared undisputed from the evidence which he tendered, and which the court declined to consider, that in 1889 Seymour and Pell employed the firm of Teller & Orahood to bring an action against the Slide Spur Gold Mines Company (Ltd.) to establish for them a vendors' lien for the unpaid portion of the purchase money. That Teller and Orahood brought such action under the agreement of Seymour and Pell to pay them reasonable compensa-

tion for their services, and that they obtained the decree establishing the vendors' lien, and that prior to the sale of the property Seymour and Pell agreed that Mr. Willard Teller should buy in the property at the master's sale, taking the title to himself as trustee under the further agreement that he should operate and develop the property, and so soon as he was able to obtain a reasonable price therefor sell it, pay to the firm of Teller & Orahood the attorneys' fees due them, and all expenses of litigation, and expenses incurred in the operation and preservation of the property. This agreement was oral, and in pursuance of it Mr. Willard Teller bought in the property, proceeded to operate it, and incurred unsatisfied expense in so doing, and also paid large sums for taxes due upon the property. The court declined to receive this evidence.

Appellee had no notice actual or constructive of this oral agreement between Teller and Seymour and Pell.

Appellant contends that his oral agreement with Seymour and Pell that he should have a lien upon this property for the purpose named could be shown against the lien of record of appellee, and although appellee had no notice of it, should be superior to the lien of appellee.

"All deeds, conveyances, agreements in writing of or affecting title to real estate or any interest therein, and powers of attorney for the conveyance of any real estate or any interest therein may be recorded in the office of the recorder of the county wherein such real estate is situate, and from and after the filing thereof for record in such office and not before, such deeds, bonds and agreements in writing shall take effect as to subsequent *bona fide* purchasers and incumbrancers by mortgage, *judg-*

*ment* or otherwise not having notice thereof.''
—Mills' Ann. Stats., vol. 1, sec. 446.

This statute has frequently been construed by
our courts. In *Perkins v. Adams,* 16 Colo. App.
96, Perkins and Maurice were executors of the will
of Touzalin, deceased. As authorized by the will,
the executors loaned $30,000.00 of the money of the
estate to Bailey, who secured the loan by a trust
deed upon certain real estate in East Denver, one
Van Kleeck being trustee. The note not being paid
at maturity, the trustee, upon request of the exe-
cutors, sold the property pursuant to the terms of
the deed. At the sale the property was purchased
by Perkins, and it was conveyed to him by the
trustee. The deed to him was dated September 4,
1895, and was recorded on the 6th day of September,
same year. January, 1897, Adams and Holmes sued
Perkins to recover a certain indebtedness, and in aid
of the action sued out a writ of attachment, which
writ was levied upon the property conveyed to
Perkins. March, 1897, Perkins conveyed the prop-
erty to Maurice and himself as executors of the will
of Touzalin. August, 1897, the executors commenced
this action against Adams and Holmes to remove
from their title the cloud created by the levy of the
attachment, alleging, among other matters, that Per-
kins never paid any part of the purchase price of
the property from his own money, but took and held
the title as trustee for the estate of the decedent.
The defendants, Adams and Holmes, relied upon
their attachment lien and want of notice or knowl-
edge that Perkins was not the absolute owner of
the property, or that he held the title otherwise than
in his individual capacity. The court sustained the
contention of the defendants and said:

''There can be no doubt that as between Per-
kins and estate, the property belonged to the latter;

but we must look further to find what the rights
of the estate as against these defendants may be.'' ·

Then quotes the section of our statute last cited.
After the quotation the opinion proceeds:

"By virtue of that provision, a purchaser or
incumbrancer of land may rely upon the title which
he finds upon the record, and will be protected
against an outstanding claim which the record does
not show, and of which he has no actual notice.
And it has been held by the supreme court and this
court that the lien of an attachment is an incum-
brance within the meaning of the statute, and takes
precedence of an unrecorded title or interest of which
the attaching creditor had no notice at the time of
his attachment.   *   *   *   These defendants found
the title to the property in question standing upon
the record in the name of Mr. Perkins, and in their
suits against him levied their attachment upon it.
*   *   *   By an arrangement between himself and
his coexecutors he took the title for the benefit of
the estate, proposing to sell the property and turn
the proceeds over to the estate.  As between himself
and the estate, he was a trustee, and equity would
compel him to account to the estate for the property;
but third persons would not be affected by the
trust, unless they had actual notice of its existence,
or unless there was something which they were
bound to know suggestive of its existence.   *   *   *
The deed recites that Perkins was the highest and
best bidder, and that the property was sold to him.
It acknowledges the receipt of the purchase money
from him and conveys the land to him, his heirs
and assigns, forever.  This is the record which the
estate, by its executors, caused to be made upon the
title; and as to outside parties with no knowledge
of the situation except what may be gained from
it it imparts absolute verity.  The plaintiffs were

entitled to rely upon that record, and were not called upon to look further.''

In *Jerome v. Carbonate National Bank,* 22 Colo. 37, the contest was between one claiming under the lien of an attachment levied, and one claiming under a prior but unrecorded deed. The court held the lien of attachment superior to the rights conveyed by the unrecorded deed, assigning as its reason therefor the section of statute just cited, and in the course of the opinion the court said:

''Whatever the law may be in other jurisdictions, it is settled in this state that one who takes property in payment or security of a pre-existing debt is to be regarded as a purchaser for a valuable consideration.   *   *   *   An attaching creditor belongs to that class of lienors described in the statute as incumbrancers otherwise than by mortgage or judgment.''

In *McFarran v. Knox,* 5 Colo. 217, McFarran had a judgment against McGovney, and filed the transcript thereof in the office of the recorder of the county where certain real estate in which McGovney had an interest was situate. By an unrecorded instrument of which McFarran had no knowledge McGovney had transferred his interest in the lot by a prior assignment to one Knox. It was held that the transcript of judgment was a prior lien over the interest acquired by the secret agreement between McGovney and Knox. The court said, in speaking of the unrecorded bond through which Knox claimed:

''A bond for the conveyance of real estate comes clearly within the provisions of this section, and unless recorded will not take effect as against a subsequent *bona fide* purchaser or incumbrancer without notice.''

Our statute, Mills', vol. 3, sec. 2529, provides:

"All and singular  *  *  *  the real estate of every person against whom any judgment shall be obtained in any court of record either at law or in equity, for any debt, damages, costs or any other sum of money, shall be liable to be sold on execution, to be issued upon such attachment, and a transcript of the docket entry of any judgment in the judgment docket, certified by the clerk, may be filed with the recorder of any county; and from the time of filing such transcript the judgment shall become a lien upon all the real property of such judgment debtor, and not exempt from execution in such county, owned by him, or which he may *afterwards acquire,* until the said lien expires."

In *Emery v. Yount,* 7 Colo. 110, the court said:

"If he (the judgment creditor) takes advantage of the statute and records,.he obtains a judgment lien upon all the realty. of the debtor not exempt from execution,  *  *  *  this lien takes precedence over subsequent purchases or incumbrances thereof."

In *McMurtrie v. Riddell,* 9 Colo. 501, the court said:

"No subsequent transfer or incumbrance by the debtor can prejudice the right of such creditor."

Applying the law to the facts before us, the deed of the master in chancery construed from its unambiguous language, conveyed the real estate in question to Teller, trustee, for the use of Seymour and Pell. The estate so conveyed was unlimited as to time. The legal title so conveyed was in fee— so was the use. The Statute of Uses operated, transferred the legal title to *cestuis que* use who, perforce the statute and the deed became the owner in fee of the legal and equitable estate in the property conveyed. In legal effect the deed of the master conveyed the entire legal and equitable estate in

the property to Seymour and Pell. When such an estate was declared by the recording of the deed, the transcript of judgment of appellee immediately attached to it, creating a lien superior to the secret lien, which, by oral agreement, existed between appellant and Seymour and Pell.

3. Appellant further contends that he has a superior lien to appellee through his attorney's lien.

Appellee had no notice. of appellant's right to or intention to claim an attorney's lien at the time he filed his transcript of judgment, and, therefore, the lien acquired through his transcript is superior to the right of an attorney's lien if one still exist between appellant and Seymour and Pell.—*Johnson v. McMillen,* 13 Colo. 426; *Fillmore v. Wells,* 10 Colo. 234; *B. & C. S. Co. v. Pless,* 9 Colo. 112.

Further, if the court below had received the evidence offered it would have shown that by the contract which appellant relied upon to show an active trust the right to an attorney's lien was waived. —*Whitehead v. Jessup,* 7 Colo. App. 461.

We think the judgment below was right, and should be affirmed.                    *Affirmed.*