[No. 7112.]

## THE OHIO AND COLORADO SMELTING AND REFINING COMPANY V. BARR.

1. EJECTMENT—*Title.* The legal title prevails where no issue of equitable cognizance is tendered. (122)

2. TRUSTS—*Statute of Uses—Operation.* The statute of uses has no effect upon implied, resulting, or constructive trusts, but solely upon dry, naked or passive trusts created by the parties, and disclosed by the terms of the conveyance. It has no application to a conveyance which transfers land to parties designated as trustees, but in which the trust is not defined, nor the beneficiary named. (122)

*Teller v. Hill* 18 Col. App. 509, distinguished. (123, 124)

And the statute has not the effect to vest title in one having a contingent interest, dependent upon a condition never performed. (129)

3. EXECUTION—*What Interest in Lands Liable.* Any interest in lands, legal or equitable, may be sold upon execution (Rev. Stat. sec. 3609). (131)

No rule of law or morals prevents the creditor from levying his execution upon any lands in which he even suspects the debtor to have an interest, and proceeding to the sale thereof. (131, 132)

The creditor may levy upon and sell lands where another claims an interest, in which he himself already has an interest, or even the whole title. (132)

4. ——*What the Purchaser Acquires—Duty of Purchaser.* One contemplating the purchase of lands upon execution sale is under duty to make diligent inquiry as to the title of the execution defendant.

The maxim *caveat emptor* applies; the purchaser takes whatever interest in the lands the debtor has, and only that interest. (132)

5. ——*Effect of Levy as to Creditor.* The levy of an execution

upon lands is not a warranty nor even a declaration that the defendant in execution has title to the lands or any interest therein. (133)

6. Estoppel—*By Conduct.* One who having title to lands, causes the same to be sold on execution as the property of another, who claims an interest therein, and becomes the purchaser at the sale is not, merely by such conduct, not having made any representation or done any act to influence other creditors, estopped to assert his title as against another judgment creditor, who redeems from such sale, causes the lands to be sold on his execution, pursuant to such redemption, and procures the conveyance of the sheriff; and this even though he receives and retains the redemption money.   (133)

7. Equity—*Jurisdiction.* It seems that where lands are conveyed to one as trustee, the conveyance not defining the trust, or naming the beneficiary, a court of equity may by its decree supply the defects of the conveyance.   (129)

8. Evidence—*Parol Admissible,* in an equity suit to establish and define the trust, and identify the beneficiary, in a conveyance of lands to one named as trustee merely.   (129)

*Appeal from Saguache District Court.*—Hon. Chas. C. Holbrook, Judge.

Messrs. Yeaman & Gove, Mr. Preston H. Barker, for appellant.

Mr. Edward C. Stimson, Mr. James J. Sullivan, Mr. Page M. Brereton, for appellee.

Mr. Justice Bailey delivered the opinion of the court.

This action is by the Ohio and Colorado Smelting and Refining Company, appellant here, for possession of the Bonanza lode mining claim, against E. C. Barr, appellee here.  Trial was to the court with judgment for Barr, and appellant brings the case here for review.

September 20, 1888, patent issued to the Bonanza Mining Company for the Bonanza lode, in Kerber Mining District, Saguache County, Colorado.  On May 2,

1902, the Bonanza Mining Company executed a deed for the claim to P. J. Larrabee, E. F. Crooks and E. C. Barr, trustees which was filed for record in the proper office May 29, 1903.

December 19, 1903, in an action previously commenced in the District Court of the City and County of Denver, Barr recovered judgment against the Hanover Mining and Milling Company for $2,605 and costs. Upon this judgment execution issued to the Sheriff of Saguache County, and levy was made on the Bonanza lode as the property of that company. The property was sold pursuant to such levy and purchased by Barr.

On January 11, 1904, appellant obtained judgment in the County Court of Chaffee County, Colorado, against the Hanover Mining and Milling Company for $661.16 and costs, and execution thereon was issued to the Sheriff of Saguache County and levy was made upon the Bonanza lode as the property of that company. September 30, 1904, the property was sold under such execution and purchased by appellant for the sum of $3,644.35, a portion of this sum being the amount of the judgment obtained by the defendant Barr against the Hanover Company, together with interest and costs which was paid to appellee through the Sheriff of Saguache County in redemption of the property from the Barr sale. The amount so paid to redeem was received by the attorney of Barr, and by him remitted to, received and retained by the latter.

There was no redemption from the sale under execution in favor of appellant, and on December 1, 1904, the Sheriff of Saguache County executed it a deed for the Bonanza claim, which was recorded the same day.

The complaint in this case was filed July 26, 1907, in the District Court of Saguache County, the substantial averments of which are that appellant is the owner in

fee of the mining claim in question, and except as wrong-fully deprived thereof by the appellèe, was entitled to and was in peaceable possession; that on August 22, 1906, while appellant was the owner and in possession, the appellee, without right or title, entered upon and ejected appellant, with prayer for possession and damages. On March 11, 1909, the appellee answered, denying the allegations of the complaint, and alleged that on September 20, 1888, the Bonanza Mining Company was the owner and in possession of the premises in question, had obtained patent therefor from the United States, and that it thereafter conveyed the same to the defendant in fee-simple title; and that by virtue of said conveyance, and from the date thereof, appellee had been in peaceable possession and control; that he had never been divested of his title, and that appellant never had any right, title or interest in the property. Thereafter appellant filed its replication, putting in issue all affirmative allegations of the answer, with a pretended plea of estoppel, to the effect that Barr had obtained a judgment against the Hanover Mining and Milling Company, and had the property sold under execution as the property of that company, at which sale Barr had purchased the property, and from which sale the appellant had redeemed, as hereinbefore set out, and the acceptance and retention by Barr of the amount so paid by appellant upon such redemption.

At the trial of tht case there was produced a certified copy of the deed from the Bonanza Mining Company to Larrabeè, Crooks and Barr, trustees, the portions of which, material for consideration, are as follows:

"Know all men by these presents, that the Bonanza Mining Company, a corporation organized and existing under the laws of the State of Ohio, for and in consideration of the sum of twelve thousand dollars to it paid by

P. J. Larrabee, of Portland, Maine, E. F. Crooks, of Northampton, Massachusetts, and E. C. Barr, of Springfield, Massachusetts, trustees, the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell and convey to the said P. J. Larrabee, E. F. Crooks and E. C. Barr, trustees, and their heirs, successors and assigns forever, all its right, title and interest in that certain mining claim or premises known as the Bonanza lode mining claim.   *   *   *   To have and to hold said mining premises, together with all the right, privileges, immunities and appurtenances of whatsoever nature thereunto belonging unto the said grantees, their successors, heirs and assigns forever.''

It should be noted that in this deed Larrabee, Crooks and Barr are named as trustees simply. The trust created by the deed, if any, is not defined; no powers of the trustees are enumerated and no beneficiary is named. The uncontradicted testimony of Barr and Crooks, which was permitted in evidence without objection, and indeed a portion of it was introduced by the appellant itself, shows that the property was conveyed to the trustees for the benefit of the Hanover Mining and Milling Company, only upon condition that that company pay at maturity certain of its promissory notes, indorsed by Barr as surety, upon which was procured the purchase price of the property, aggregating $12,000, in which event the legal title was to be conveyed to that company; but should it fail to so pay the notes, and Barr should pay them, then the property was to be the property of Barr, and he should have conveyances from his co-trustees. The testimony further shows that the Hanover Company did not pay the notes, or any part of them, but that Barr did, and that at no time has the Hanover Company reimbursed Barr in any sum whatsoever on account of such payments. Appellant intro-

duced in evidence the deed to it from the Sheriff of Saguache County, for the property, containing the usual recitals as to entry of judgment, levy and sale under execution, and purchase by appellant.

Other evidence received was to the effect that on April 7, 1903, the Hanover Mining and Milling Company, through its officers and directors, endeavored to negotiate a sale of the Bonanza mining claim, and directed a conveyance by the trustees of the claim to one H. C. Donnell, a proposed purchaser of the property. These negotiations were approved and concurred in by the stockholders of the company, including Barr and his co-trustees.

Barr offered in evidence certified copies of two deeds from his co-trustees, Larrabee and Crooks, purporting to convey their interests in the Bonanza lode. To the introduction of this testimony the appellant objected, and upon its objection being overruled, reserved exceptions. These deeds were dated, respectively, August 9, 1907, and January 28, 1908, and recorded February 7th of that year. Each contained a recital in effect as follows: That on or about May 2, 1902, the Hanover Mining and Milling Company executed its promissory notes for the sum of $12,000; that these notes were indorsed by Edwin C. Barr (the defendant in this case) and discounted; that the proceeds were used by the Hanover Mining and Milling Company to purchase the Bonanza lode from the Bonanza Mining Company; that title to the claim was vested in Larrabee, Crooks and Barr, as trustees, upon the understanding that if the notes were paid at maturity by the Hanover Mining and Milling Company the property should be conveyed to that company by such trustees, but in case of default in payment of the notes, and that the said Barr, as endorser, should pay the same, then the property should be conveyed to

Barr by his co-trustees; that the Hanover Mining and Milling Company had defaulted in payment of such notes, and that Barr, as endorser, had paid the same together with interest and costs; that since such default the last named company has refused to pay the amount of such notes to Barr, or to save him harmless by reason of his endorsement, whereupon it had become the duty of the trustees to convey to him all the right, title and interest in the property acquired by them as such trustees.

The action being for possession, with no issue tendered of equitable cognizance, the naked legal title must control, and unless the appellant has shown that such title passed in fact to the Hanover Company, and from that company to it through the execution sales, the judgment below was right and should be affirmed.

The main contention is that the property in controversy was conveyed to Barr and his co-trustees for the use and benefit of the Hanover Mining and Milling Company, and that by operation of the statute of uses, which has been declared to be in force in this state, *Teller v. Hill,* 18 Colo. App. 509, 72 Pac. 811, the legal and equitable titles were merged, upon the execution and delivery of the conveyance under consideration, in that company.

The statute of uses was enacted to remedy the evils arising from a separation of the legal and equitable estates in land, which at common law resulted whenever a trust or use was created, the object and purpose being to unite both estates in the beneficiary and to divest the trustees of all title or interest. Without diversity of opinion the statute, however, is held to operate only in cases, where the trust is a dry, naked, passive one. The statute does not operate upon implied, resulting or constructive trusts, but solely upon express trusts created

by the parties and disclosed by the terms of the convey-
ance itself. · It acts upon the conveyance direct, and not
upon unascertained matters outside of it.   This seems
axiomatic and needs neither authority ·nor argument to
support it.  If the title is passed automatically by opera-
tion of the statute upon the conveyance which creates the
trust or use, then, in the very nature of things, such in-
strument must designate some beneficiary or usee to
whom title may pass, otherwise there is nothing upon
which the statute can operate automatically.  If under
a conveyance in which the beneficiary or usee is not
named, but is absolutely unknown and unascertained, the
statute can be said to take the legal title out of the trus-
tee, the effect could only be to suspend it in the air, and
no such absurd result could ever have been in contem-
plation.  The fact is that the instrument itself creates no
express trust in favor of the Hanover Company.  That
company is not mentioned in the conveyance, either di-
rectly or otherwise, and so far as the instrument dis-
closes, it may in fact have had no legal existence.  If a
trust or use was created by this conveyance in favor of the
Hanover Company, it rests upon evidentiary matters
wholly outside the deed, and can only be ascertained,
declared and made operative in a suit in equity.  The
fact that such a suit is necessary to have the instrument
construed, its effect declared and the trust administered,
in and of itself alone, is a demonstration that the statute
does not and cannot operate upon it.

　　The decision in the case of *Teller v. Hill, supra,* is
mainly relied upon to support the contention that the
statute of uses operates upon the conveyance in question.
The deed in that case is entirely different in essential
particulars from the one now under consideration.   In
that case the recitals in the deed were properly and
correctly construed by the court as a part of the in-

strument, the consideration being expressed as moving from the *cestui que use,* Pell and Seymour, not from Willard Teller, the grantee, and the names of the *cestui que use* are disclosed in the deed, while in the case at bar the deed not only recites that the consideration was paid by the grantees, denominated trustees, but fails utterly to indicate for whose use or benefit the trust, if any, was created. It is impossible to determine from a consideration of the conveyance itself who, if anyone, is the *cestui que use,* or indeed whether there is any *cestui que use* at all, from which it is obvious that the contention that the statute of uses operates upon it cannot logically be maintained. If a trust or use was created at all in favor of the Hanover Company, it is one which rests in parol and can only be ascertained by resort to equity. Thus a vitally different situation from that found in the Teller-Hill case is presented. There the trust is completely expressed in the conveyance. Indeed, the main reliance in that case for affirmance of the judgment, which declared that the statute operated to merge the two titles, was the fact that the trust is fully set forth in the deed itself, with all parties in interest designated and their relations disclosed by its affirmative recitals. No principle is more firmly established than that uses or confidences resting in parol are not executed by the statute of uses, except where the transfer itself might have been by parol. As a practical matter this must be so. Where the conveyance fails to disclose in whom the equitable title is vested, how can the statute, by its own force, be held to point out and declare the beneficiary actually intended, and vest the legal title accordingly? Because of these essential differences between the conveyance considered in the case of *Teller v. Hill, supra,* and the one now before us, it is manifest that the decision in the former case is not only not controlling here, but can have no possible application.

In support of the various legal propositions announced above, we cite the following authorities: *Strimpfler v. Roberts,* 18 Pa. St. 283, 57 Am. Dec. 606; *Trask v. Green,* 9 Mich. 358; *Little v. Lesia,* 5 Mich. 118; *United Brethren Church v. First M. E. Church,* 138 Ill. 608, 28 N. E. 829; *Auten v. City Electric Street Railway Co.,* (C. C.) 104 Fed. 395; Tiedman on Real Property (3rd Ed.) § 346; 2 Washburn on Real Property (6th Ed.) § 1356; and 39 Cyc. pp. 203, 206 note 13, 223 note 83.

In the case of *Auten v. City Electric Railway Co., supra,* certain deeds were to be considered and construed, in which the grantees were named as Allis, Bradford and Johnson, trustees, but none of the deeds, specified for whom the grantees were trustees, nor were the objects of the trust stated. It was, however, conceded by all the parties to the suit that these men were trustees for the defendant company. It was urged that the statute of uses, admittedly in force in Arkansas, where the suit was brought, transferred the title from these trustees to the Electric Company. Disposing of this contention the court, at page 400 of the opinion, said:

"Had the deeds to Allis, Bradford and Johnson shown on their face that they only held as trustees for the street railway company, then under the statute of uses, which is in force in this state, the legal and equitable title would have been merged in favor of the usee, the street railway company, but as the usee was not named in the deeds, the statute of uses does not apply."

In *Strimpfler v. Roberts, supra,* Black, C. J., says at page 301, (57 Am. Dec. 606).

"But here the warrant, deed poll, and patent, purport to give Dugan the legal, as well as the equitable title, for his own use, and that of his heirs and assigns. They do not on their face require him to hold it for the

use of Benson.  If there be anything *in pais* and outside of the written title, from which a trust of the land results to Benson, such a trust can be executed in no other way, than by the voluntary conveyance of the trustee, or by a decree in chancery, or (what is equivalent here), a judgment in ejectment.''

In the case of *Little v. Lesia, supra,* the deed to be construed granted certain real property to Hiram L. Miller of Saginaw, administrator of the estate of Chas. Little, deceased.  The question to be determined was whether Miller held the legal title, so that he might convey it, or whether the property had become part of the legal assets of the estate of Chas. Miller and subject to the disposition of the probate laws.  Campbell, Judge, in disposing of this question says, at page 122:

''The legal interest covered by the deed, vested in Hiram L. Miller, as the only grantee named in the instrument capable of taking.  Holding the legal title to that interest, he can convey it, unless restrained by statute.  Whatever equities exist in the person interested in the estate, the legal holder, or trustee, is the only one who can pass the title.  No express trust appears, and the grant of the estate is coupled with no restrictions.  The statute provides that a naked trustee for the use of another takes no estate at all, but the title vests in the beneficiary: Comp. L. Chap. 86.  But here, the deed is entirely different.  It resembles that construed by this court in *Reed v. Winslow,* 2 Doug. Mich. 68; and any trust existing under it is an implied equity, and not a legal interest.''

In *Trask v. Green, supra,* the court, by Christiancy, Judge, said at page 367:

''But secondly:  Had the statute of uses been in full operation here at the time of these several conveyances, it would not have affected the present case: as that stat-

ute never operated upon mere resulting trusts, or trusts arising by operation or implication of law, but only upon those express trusts actually created by the parties: *Garfield v. Hatmaker,* 15 N. Y. 477; *Moore v. Spelman,* 5 Denio, 225. Nor did it apply to or execute trusts created by parol, except in those cases where the conveyance of the legal estate might be by parol, as by feoffment: Shep. Touch. Ch. 9, p. 213; 7 Bacon's Abr. 92; 1 Greenl. Cruise, Tit. xi, Ch. 2, note to sec. 29, and authorities there cited.''

In *United Brethren Church v. First M. E. Church, supra,* the form of the granting clause in the deed to be construed was as follows:

''To 'Josiah G. Heck, Adam Fries and Standard D. Wendell, trustees of the United Brethren Church and their successors in office, of the city of Moline,' * * * to have and to hold the same to said second party, 'and their successors and assigns forever.' ''

The contention of the appellants was that this deed under the statute of uses transferred the title to the property in question direct to the church as *cestui que use.* That of the appellee was that it would be obviously contrary to public policy, as well as in direct contravention of the statute of frauds, to permit the statute of uses to execute implied resulting or constructive trusts, in other words secret trusts. The court, by Chief Justice Magruder, said:

''That the deed from Morphy put the legal title in the trustees named therein as grantees, and not in the corporation, does not seem to be denied by appellant, but it is claimed that such grantees held the property in trust for the Church, for the use of the Church, and that, under section 3 of the Conveyance Act, the trust was executed by the statute of uses, so as to vest the fee at once in the Church, as the *cestui que use.* (*Witham*

*v. Brooner*, 63 Ill. 344.) But the statute of uses applies only to express trusts, and not to implied or constructive trusts, or trusts created by operation of law. (Tiedman on Real Prop., sec. 497.) In *Witham v. Brooner, supra,* we said: 'Under this statute a deed in the form of a bargain and sale must be regarded as having the force and effect of a feoffment; and, under the statute of uses, feoffment to A for the use of, or in trust for B, would pass the legal title to B.' But in the case at bar there is no express trust created. The deed made by Morphy does not convey the lot to the grantees in trust for, or to the use of, the church; it does not even convey it to them *as* trustees.''

In 39 Cyc., at page 223, after stating the proposition that where the statute of uses has passed title to the *cestui que trust* the trustee cannot convey any title to the property, unless by direction or consent of the beneficiary, in other words, that the trust may be ignored, it is said:

''Of this nature is a trust merely to the use and benefit of a named beneficiary or beneficiaries, the only duty of the trustee being to hold the title, no trust being specified.''

In Tiedman on Real Property, 3rd Ed., sec. 345, this is said:

''There must, furthermore, be some ascertained person *in esse* who is to take and who can take the use under the conveyance. * * * Any person *in esse* will fulfil the requirements of the statute. But if the *cestui que use* is not *in esse,* or not ascertained, the use is future and contingent, and the operation of the statute is suspended until the *cestui que use* is known.''

Upon principle and authority it seems clear, therefore, that the statute of uses did not operate automati-

cally to transfer the legal title to this property from the Bonanza Company to the Hanover Company.

It is unnecessary for the purposes of this opinion to determine the question of the admissibility of the parol evidence which was offered and received tending to show the relations of the parties and to establish the alleged trust. On the authority of *Johnson v. Calman,* 19 Colo. 168, 34 Pac. 905, 41 Am. St. 224, such evidence undoubtedly would have been competent in a suit in equity brought for the purpose of having the character of the conveyance ascertained and the trust, if any, declared and enforced. However, in view of the fact that this evidence was for the most part offered and received without objection, it may not be amiss to consider just what it actually does establish. Unquestionably this evidence shows conclusively: First. That the Hanover Company had no interest in the property except such as was contingent upon the performance by it of precedent conditions, namely, the payment of the several notes aggregating $12,000 at maturity, which Barr had indorsed for it as surety, and upon which the purchase price of the property had been procured, conditions which the company confessedly never performed; and, Second. That it was agreed and understood that in case the company failed, as it did, to pay the notes according to their tenor and effect, and Barr should pay them, as he did, then the latter should be the real owner of the property and his co-trustees should convey to him. Thus it is shown that Barr held title to the property as trustee coupled with an interest, and that the Hanover Company's interest was but a contingent one. It is clearly apparent, upon the authorities already cited, that, under such circumstances, the statute of uses could not operate on this conveyance. The mere statement of the relations between the parties, as disclosed by this evidence, namely, that the Hanover Company's right was contingent and

that Barr held as trustee, coupled with an interest, is the strongest possible argument against the operation of the statute. It follows, therefore, whether the decision is based solely upon the construction of the deed according to its express terms, or upon that instrument considered in the light of the explanatory evidence offered, that the Hanover Company never had more than a contingent interest in the property, and that the contingency upon which title could vest in it has not happened.

It is further contended that Barr, by reason of his conduct in procuring sale, under execution, of the Bonanza claim, upon his judgment against the Hanover Mining and Milling Company, purchasing the property at such sale and subsequently receiving and retaining the money paid by appellant in redemption, under its judgment against that company, is estopped from asserting independent title.

A statement of the condition of the title at the time of the Barr sale is necessary to à proper disposition of this contention. At that time the record title was in Crooks, Larrabee and Barr, trustees, by virtue of the deed from the Bonanza Mining Company. There was nothing of record to indicate that the Hanover Mining and Milling Company had any right or interest whatever in the property. The oral agreement between the various parties, Crooks, Larrabee and Barr, as trustees, and Barr, as an individual, and the Hanover Mining and Milling Company, whereby the Hanover Company might acquire title by repaying to Barr the $12,000, the purchase price of the claim, of which right Barr of course had full knowledge, was in existence, but this was all *in pais* and completely outside the record. There is nothing to show whether the appellant had or had not knowledge thereof, or that it had any knowledge whatever of the condition of the title of the Bonanza claim,

other than such as is imputed to it by the record. Such was the situation when Barr brought suit, and when appellant redeemed from the Barr sale. There is no evidence that Barr had the slightest knowledge, at the time of this sale, that appellant had any claim against the company, or had any intention of redeeming from such sale. Under our statute any interest in land, whether equitable or legal, may be sold under execution, and Barr had a right to have execution against and sell any right or interest that the Hanover Company might have in the property, and of course such interest and only such as the Hanover Company actually had could be thus sold. No one could be misled by the action of Barr, as the record showed no title whatever in the Hanover Company. It is not claimed that either Barr or anyone for him made any representation to the appellant that the right or interest of the Hanover Company in the property was other than that which the testimony introduced showed it to be. In *Copeland v. Colorado State Bank of Durango,* 13 Colo. App. 59 Pac. 70, it is said:

"At an execution sale, the proceedings in connection with which have been regular and valid, the purchaser takes whatever title or interest the execution defendant may have; and it is of the defects in that title that he assumes the risk. If the defendant has good title, the purchaser gets it; if a partial title, he gets that; or, if no title, he gets nothing: but he takes his chances on the title the defendant has, and if that proves worthless, he is without remedy. It behooves him to acquaint himself with the title before purchasing; and his complaint afterwards that it was unsatisfactory, will not be heeded."

Since, with us, any interest in real property, no matter what, is subject to execution, there is no rule

of law or morals which prevents an execution creditor from levying upon and selling any property or interest therein which he even suspects an execution debtor may have. It is a well settled rule that to such sales the rule *caveat emptor* applies. 24 Cyc. 57. The fact that Barr already claimed, or in fact had an interest in the property is no reason why he might not subject any interest therein, held by some one else, to a sale pursuant to a judgment against such other. Upon this proposition there can be no manner of doubt. It is specifically supported by the following authorities.—*Seaman v. Hax,* 14 Colo. 536, 24 Pac. 461, 9 L. R. A. 341; *Martin v. Zellerbach,* 38 Cal. 300, 99 Am. Dec. 365; *Thomas v. Bowman,* 30 Ill. 84; and *Matless v. Sundin,* 94 Iowa, 111, 62 N. W. 662. In the latter case the court said (94 Iowa, at page 114, 62 N. W., at page 663):

"It is well settled that the rule *caveat emptor* applies to sheriff's sales, and that the interest sold under the execution is that of the judgment debtor."

Appellant contends that the appellee stood by and allowed this property to be sold as belonging to the Hanover Company without objection and without giving warning of the condition of the title. In response to this it is sufficient to say that there is no evidence that the appellee ever knew of the redemption by the appellant, or of its intention to redeem, until after the redemption had been accomplished. Barr knew that the Hanover Company had a contingent right or interest in the property, and it was that interest and that only which he sought to, or did, or could sell. We do not know, and certainly the appellant has failed to indicate, how Barr could have prevented the redemption even if he had desired or attempted to do so. While it is true Barr claimed ownership based on the failure of the Hanover Company to comply with the condition under which it might ac-

quire title from the trustees, as a precautionary measure, he had a right to offer for sale and buy whatever contingent interest, valuable or otherwise, the Hanover Company had in the property.

There is no pretense that the sale was other than a good faith transaction. The appellant, by its redemption from the Barr sale, acquired whatever contingent right or interest in the property the Hanover Company had, that being the interest sold under the Barr execution. That it never sought to exercise that right by offering to reimburse Barr, and demanding the legal title does not change the fact that it might have done so. Whether such right still exists we neither affirm nor deny.

As already indicated, an execution creditor is entitled to sell any pretended right or interest of a judgment debtor in any property. If it turns out that he had no right or interest, nothing passes. But the mere levy of an execution is not a warranty, nor even a declaration, that the judgment debtor has in fact any interest or title. The act of causing property to be sold under execution is at most no more than an assertion that the judgment creditor either has, or claims to have, some title or interest in the property, but it is not an averment that in point of fact he has any such title or interest, much less that he has valid title. The doctrine of estoppel *in pais* proceeds wholly on the theory that the party to be estopped has, by his declaration or conduct, misled another to his prejudice, so that it would be a fraud upon such other to allow the true state of facts to be proved. It cannot be said that a judgment creditor, by the mere fact of causing whatever interest or pretense of interest a judgment debtor may have, to be sold under execution, has deluded a purchaser at such sale into the belief that the debtor has good title. *Martin v. Zellerbach, supra.*

The duty is upon the purchaser to be diligent in inquiry and ascertain what the facts are respecting such interest or title. There is not the slightest showing in this case that appellant made any inquiry whatever, or exercised the slightest diligence, to learn the facts.

Furthermore, no sufficient plea of estoppel or proof to sustain it is found in the record. All that is alleged and shown to have been done on the part of appellee in this connection was to cause the property to be sold under his judgment against the Hanover Company, from which sale the appellant redeemed. It is neither alleged nor proved that Barr said or did a solitary thing respecting such title or interest, either calculated or intended to mislead, or that appellant was thereby in any way influenced or induced to redeem.

The case of *Blodgett v. Perry*, 97 Mo. 263, 10 S. W. 891, 10 Am. St. 307, is one where the facts alleged to support the plea of estoppel are quite similar to those in this case. There plaintiff brought an action of ejectment. Defendant answered setting up the following facts: That the Union Bank of Missouri, through which plaintiff derived title and for which he was attorney during the proceedings hereinafter mentioned, commenced an action by attachment against one Perry, and the writ of attachment was levied upon the land in controversy; judgment was recovered against Perry and a special execution was issued thereon and levied upon the land in controversy, and after advertisement the land was sold under the execution and bought by one Shumate, through whom defendant derived title. The wording of the part of the answer material to our present purpose is as follows:

'That at the sale under the execution aforesaid, said Shumate, relying upon the acts of said bank in attaching, advertising and selling under execution the real es-

tate in controversy, as the property of Amos M. Perry, as a declaration, admission and assertion of said bank that it was not the owner of said real estate and that said Amos Perry was the owner thereof, purchased the same and paid therefor a valuable consideration.''

After sale Shumate assigned the certificate of purchase to defendant, who received a sheriff's deed to the premises. The plaintiff purchased from the bank with full knowledge of all the foregoing facts; he claimed that the bank was estopped from asserting any title to the land acquired from Perry by it prior to the sale to Shumate. Plaintiff based his claim of title upon a deed executed by Perry to the bank prior to the levy of the attachment and execution and recording. The court held that the bank and the plaintiff were not estopped, by sale of the land under execution as the property of Perry, from asserting their own title. The court said in part, at pages 272-274, (10 S. W. 892, 10 Am. St. 307.)

"This plea is plainly bad on its face. It does not contain within its allegations a single element of estoppel. It is not alleged that Shumate was misled by any act of the Union Bank or of plaintiff, or that he was in ignorance of the true state of the title, or that the former deed to the Union Bank was not put to record, or that the act of the Union Bank induced Shumate to buy the land which otherwise he would not have bought.
\* \* \*

Furthermore, there must be a *certainty* about the alleged estoppel; the misrepresentation must be plain, not doubtful or matter of mere inference or opinion; for the courts will not suffer a man to be deprived of his property or security where he had no intention to part with it. It is much the same thing to say that the representation or conduct is such as would naturally lead to the action taken; that is, it should be such as to justify

a prudent man to act upon it. Bigelow on Est. (3rd . Ed.) 490, 491. Tested by these authorities, and the rule they enunciate, the plea was wholly worthless.''

In the case of *Griffith v. Wright,* 6 Colo. 248, the court briefly summarizes, at page 249, the essentials of an estoppel by conduct as follows:

, . ''First. There must have been a representation or concealment of *material facts.*

Second. The representation must have been made with *knowledge* of the facts, unless the party making the representation was bound to know the facts, or ignorance of them was the result of gross negligence. `

. Third. The party to whom it was made must have been *ignorant* of the truth of the matter.

Fourth. It must have been made with the *intention* that the other. party should act upon it; but gross and culpable negligence on the part of the party sought to be estopped, the *effect* of which is to make a fraud on the party setting up the .estoppel, supplies the place of intent.

: , Fifth. The other party must have been induced to act upon it.''

In *Davidson v. Jennings,* 27 Colo. 187, 200, 60 Pac. 354, 358, 48 L. R. A. 340, 83 Am. St. 49, this court adds the following corollary to the above propositions:

, ''To entitle a party to invoke the doctrine of estoppel, he must actually have been misled and induced to act to his prejudice by reason of another's conduct, he having on his part exercised due diligence to ascertain the truth. In *Moore v. Bowman,* 47 N. Y. 494, the doctrine is thus concisely stated: .

'To have this effect, however, the defendant must actually have been misled by the plaintiff's conduct, and induced thereby to change his position. If he is not so misled * * * and with a reasonable use of means within his

reach he might have ascertained the fact, he could not·set
up an estoppel.  The truth is, the party setting up an
estoppel is himself bound to the exercise of good faith
and due diligence to ascertain the truth.'

There is neither pleading nor proof to show misrep-
resentation or concealment, ·or that Barr's action led
appellant to part with its ·money, or that· it would not
have redeemed but for the acts of Barr, or that it was not·
fully advised of the exact situation.  In law the appel-
lant was charged with notice of the then record title,
which disclosed no interest in the Hanover Company.  It
seems clear, therefore, that appellant redeemed from the
Barr sale at his own risk, and cannot now be heard to
urge estoppel against the latter in his claim of title and
right of possession.  Owing to the peculiar character of
the pleadings and manner of conducting the trial in the
court below, it is but just, to the attorneys for appellant
to say that their connection with the case began in this
court.

The judgment should be affirmed, and it is so or-
dered.

Decision *en banc.*

Mr. JUSTICE GABBERT, Mr. JUSTICE GARRIGUES and
Mr. JUSTICE SCOTT dissent.

SCOTT, J., dissenting:

I am of the opinion that the deed to the trustees in this
case, operated under the statute of uses, as a direct con-
veyance from the Bonanza Company to the Hanover
Company, and further, that the defendant Barr, a trus-
tee under the deed, and who of all persons should have
known of the secret oral agreement relied on, if there
was such agreement, by his conduct in procuring the levy

and sale of the premises, as being the property of the Hanover Company, and in accepting the money of the Ohio Company in redemption from such levy and sale, is estopped to question the title of the Ohio Company.

Mr. JUSTICE GABBERT dissenting:

The testimony establishes that the Hanover Company paid the purchase price, and the title to the property was taken in the name of Barr, Larrabee and Crooks, trustees. Under this state of facts the title was held in trust by the grantees, for the benefit of the Hanover Company by operation of law. *Lipscomb v. Nichols,* 6 Colo. 290.

It further appears from the testimony that the purpose of having the title vested in the trustees, was to secure Barr against loss in having indorsed the notes given by the Hanover Company for the money it borrowed with which to make the purchase. This state of facts is established by parol testimony only, and is an attempt to create a trust or interest in the property in favor of Barr, which section 6, of the Statute of Frauds, section 2660, Rev. Stat. 1908, expressly inhibits being created in this manner; that section states: ''No estate or interest in lands, * * * nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing.'' When, therefore, it appears that the title to the property was held in trust by Barr and his co-trustees, for the benefit of the Hanover Company, which title the Ohio Company has acquired, Barr

cannot be heard to assert that he has an interest therein superior to the Ohio Company by virtue of a parol agreement with the Hanover Company, which under the statute is void. The trust attempted to be established by Barr is an express one. Where this class of contracts relates to an interest in lands, the statute of frauds, to which we have referred, requires that they shall be manifested and proved by writing.—*Learned v. Tritch,* 6 Colo. 43.

The writer is authorized to state that Mr. Justice Garrigues concurs in this opinion.

Decided November 2, A. D. 1914. Rehearing denied December 7, A. D. 1914.